**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| **FLOORING SOLUTIONS, INC.,** | ) | **Case No. 16-12380-BFK** |
| | ) | **Chapter 7** |
| Debtor. | ) | |
| | ) | |
| **SONABANK,** | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | **Contested Matter** |
| | ) | |
| **FLOORING SOLUTIONS, INC., and** | ) | |
| **KLINETTE H. KINDRED, TRUSTEE,** | ) | |
| | ) | |
| Respondents. | ) | |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

COMES NOW, the movant Sonabank ("Sonabank"), by counsel, and files this Motion

for Relief from the Automatic Stay ("Motion") pursuant to 11 U.S.C. § 362(d) and Bankruptcy

Rule 4001(a), to permit Sonabank to gain access to records of the Debtor and to enforce its lien

against certain accounts receivable, contract rights and personal property of the Debtor or this

Estate, and to take action necessary to preserve and protect the value of potential contract rights,

including the ability to appoint a receiver for the purposes of investigation into and liquidation of

accounts receivable and other contract rights and to recover possession of, and liquidate,

Bruce W. Henry, VSB # 23951
Kevin M. O'Donnell, VSB #30086
Jeffery T. Martin, Jr., VSB # 71860
Henry & O'Donnell, P.C.
300 N. Washington St., Suite 204
Alexandria, Virginia 22314
(703) 548-2100
Counsel to Sonabank

inventory of the Debtor necessary to the completion of contracts pending as of the petition date herein. In support of its motion, Sonabank states as follows:

1.    This is a proceeding seeking relief from the automatic stay and is a contested matter pursuant to Bankruptcy Rules 4001 and 9014, this matter is a core proceeding and this Court has jurisdiction properly founded upon 28 U.S.C. §§ 157 and 1334.

2.    The Debtor, Flooring Solutions, Inc. ("FSI" or "Debtor"), filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on July 8, 2016, and thereafter Klinette H. Kindred ("Trustee") was appointed interim Chapter 7 trustee herein and continues to serve in that capacity.

3.    Upon information and belief, FSI operated a substantial business as one of the largest commercial flooring contractors in the Washington Metropolitan area. FSI had been in business since 1998 and routinely contracted to provide commercial flooring solutions to some of the largest commercial builders and developers in the Washington Metro area. Shortly prior to its filing with this Court, FSI is believed to have been performing on over twenty (20) separate contracts to provide commercial flooring in substantial new commercial construction in the Washington Metropolitan area, including projects for the new Capitol One headquarters in McLean, Virginia, renovations of the Watergate Hotel and complex and the offices of the U.S. Department of Health and Human Services.

4.    FSI is obligated to Sonabank pursuant to a certain Promissory Note dated June 16, 2008 in the original principal amount of $3,000,000.00. The Promissory Note was amended from time to time thereafter, including modifications providing for an increase of the maximum credit available to $4,000,002.00. A copy of the Promissory Note and all Amendments thereto are

attached hereto as **Exhibit A** and referred to collectively as the "Note." All amounts owed

pursuant to the Note are hereby referred to as the "Indebtedness."

5.      The terms of the Note are governed by a certain Business Loan Agreement dated

June16, 2008 (the "Loan Agreement"), a copy of which is attached hereto **Exhibit B**.

As security for repayment of the Indebtedness, FSI granted a security interest to Sonabank

pursuant to i) a certain Commercial Security Agreement executed by FSI as of June 16, 2008,

and ii)  a certain Security and Compliance Agreement executed by FSI as of June 16, 2009

(collectively, the "Security Agreement"). Under the terms of the Security Agreement, FSI

granted and provided to Sonabank a security interest in and lien against virtually all assets of

FSI, including all equipment, furniture, fixtures, inventory, chattel paper, accounts and general

intangibles, contracts and contract rights" (hereinafter the "Collateral").  A true and correct copy

of the Security Agreement is attached hereto as **Exhibit C**.

6.      Sonabank perfected its security interest in the Collateral by filing UCC-1

Financing Statements with the Virginia Secretary of State on June 18, 2008 and March 7, 2012,

with a continuation statement being filed on January 22, 2013. Copies of the original financing

statements and the continuation statement are referred to collectively as the "Financing

Statements" and are attached hereto collectively as **Exhibit D.** The Note, Loan Agreement,

Security Agreement, Financing Statements and all other related documents are referred to

collectively herein as the "Loan Documents."

7.      FSI is in default under the Note, the Loan Agreement and the Security

Agreement, and Sonabank is seeking relief from the automatic stay to enforce its rights under

state law against the Collateral, including the right to obtain appointment of a receiver to take

charge of collateral and liquidate same for the benefit of Sonabank's secured liens. As of July 12,

2016, the payoff under the Note was $4,067,619.33 with interest accruing at a rate of $712.36 per diem plus attorneys' fees and costs incurred. There is no equity in the Collateral.

8.      Cause exists to grant relief from the stay. It is believed that most of the inventory located in the Debtor's warehouses was purchased specifically for contract work ongoing and being performed by FSI shortly before the Chapter 7 filing herein. Sonabank has been informed that FSI's remaining performance under many of these contracts has been assigned to other contractors who are likely moving to complete work attendant to the specific contracts. Sonabank requires immediate relief to be able to access inventory and seek to sell inventory to contractors in order to realize a reasonable recovery for the value of specifically ordered materials.  Additionally,  the receivables and contracts are in danger of being substantially diminished due to FSI's failure to prosecute the work or to communicate with the general contractors since the time the petitions were filed. Sonabank requires prompt relief to investigate the potential for collection of accounts and/or completion of any work necessary to facilitate collection.

9.      Sonabank represents and avers that there is no equity in the Collateral that could be used for the benefit of general unsecured creditors and that the Collateral is not required for the Debtor's reorganization.  As the Debtor has filed a Chapter 7 petition before this Court, there is no attempt or apparent intent to effect any reorganization in this proceeding.

10.     Sonabank and the Trustee are in discussions with a view toward an agreed order resolving this matter. Sonabank's counsel is optimistic that these discussions will be successful.

11.     In furtherance of, and ancillary to, relief from the stay, Sonabank requests that the Court authorize the Trustee to consent to appointment of the Receiver for the Collateral.

WHEREFORE, all parties served with this motion are hereby advised pursuant to L.R. 4001(a)-1 that a written response to this motion must be filed with the Clerk of the United States Bankruptcy Court and served on the undersigned counsel for the plaintiff within fourteen (14) days of the date of service of this motion, and Sonabank does further pray that this court grant it relief from the automatic stay pursuant to 11 U.S.C. 362(d) to permit it to enforce its rights in the Collateral, including the appointment of a general receiver to take control and charge of such Collateral, and that Sonabank have such other and further relief as this Court may deem just.

Respectfully submitted,

SONABANK
By Counsel

/s/ Kevin M. O'Donnell
Bruce W. Henry, VSB # 23951
Kevin M. O'Donnell, VSB #30086
Jeffery T. Martin, Jr., VSB # 71860
Henry & O'Donnell, P.C.
300 N. Washington St., Suite 204
Alexandria, Virginia 22314
(703) 548-2100
Counsel to Sonabank

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of July, 2016, a copy of the foregoing was served via first class mail, postage pre-paid, to the Debtor, Debtor's Attorney and Chapter 7 Trustee, and via the ecf system to Debtor's counsel and the Chapter 7 Trustee.


/s/ Kevin M. O'Donnell

# EXHIBIT A

CERTIFIED TRUE COPY

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $3,000,000.00 | 06-16-2008 | 12-16-2009 | 52-01-000220 | | | | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Flooring Solutions, Inc.
22455 Powers Court
Sterling, VA 20166

**Lender:** Sonabank, N.A.
Warrenton Loan Production Office
550 Broadview Avenue
Warrenton, VA 20186

---

## IMPORTANT NOTICE

THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.

---

**Principal Amount: $3,000,000.00**    **Initial Rate: 6.500%**    **Date of Note: June 16, 2008**

**PROMISE TO PAY.** Flooring Solutions, Inc. ("Borrower") promises to pay to Sonabank, N.A. ("Lender"), or order, in lawful money of the United States of America, the principal amount of Three Million & 00/100 Dollars ($3,000,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on December 16, 2009. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning July 16, 2008, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the annual interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Wall Street Journal Prime as published in the Wall Street Journal (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 5.000% per annum. The interest rate to be applied to the unpaid principal balance during this Note will be at a rate of 1.500 percentage points over the Index, resulting in an initial rate of 6.500% per annum. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Sonabank, N.A., Warrenton Loan Production Office, 550 Broadview Avenue Warrenton, VA 20186.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 8.000% of the unpaid portion of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, at Lender's option, and if permitted by applicable law, Lender may add any unpaid accrued interest to principal and such sum will bear interest therefrom until paid at the rate provided in this Note (including any increased rate). Upon default, the interest rate on this Note shall be increased to 21.000% per annum. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, or a trustee or receiver is appointed for Borrower or for all or a substantial portion of the assets of Borrower, or Borrower makes a general assignment for the benefit of Borrower's creditors, or Borrower files for bankruptcy, or an involuntary bankruptcy petition is filed against Borrower and such involuntary petition remains undismissed for sixty (60) days.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

# PROMISSORY NOTE
## (Continued)

Loan No: 52-01-000220                                                                                                    Page 2

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within thirty (30) days; or (2) if the cure requires more than thirty (30) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest, together with all other applicable fees, costs and charges, if any, immediately due and payable, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Subject to any limits under applicable law, upon default, Borrower agrees to pay Lender's attorneys' fees and all of Lender's other collection expenses, whether or not there is a lawsuit, including without limitation legal expenses for bankruptcy proceedings.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Virginia without regard to its conflicts of law provisions. This Note has been accepted by Lender in the Commonwealth of Virginia.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the applicable courts for Fauquier County, Commonwealth of Virginia.

**CONFESSION OF JUDGMENT.** Upon a default in payment of this Note at maturity, whether by acceleration or otherwise, Borrower hereby irrevocably authorizes and empowers William Lagos or Marie Leibson as Borrower's attorney-in-fact to appear in the Fauquier County clerk's office and to confess judgment against Borrower for the unpaid amount of this Note as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due, attorneys' fees plus costs of suit, and to release all errors, and waive all rights of appeal. If a copy of this Note, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Borrower waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void, but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on this Note have been paid in full.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $32.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by 1st UCC on accounts, inventory, contracts and contract rights.

**LINE OF CREDIT.** This Note evidences a revolving line of credit. Advances under this Note may be requested orally by Borrower or as provided in this paragraph. All oral requests must be confirmed in writing on the day of the request. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person or persons are authorized, except as provided in this paragraph, to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: Fazeel M. Syed, President of Flooring Solutions, Inc. A Borrowing Base Certificate and copy of latest A/R to accompany request. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

**BORROWING BASE REQUIREMENTS.** Pursuant to the terms and conditions of the Loan, Lender shall make advances to the Borrower from time to time during the term of the Loan upon Borrower's request, provided that the outstanding principal amount of such advances may not exceed the lesser of (i) $3,000,000.00 or (ii) the Borrowing Base (as defined herein) (such amount being the "Revolving Commitment"). Within that limit, and subject to the other terms and conditions of the Loan, the Borrower may from time to time borrow, prepay, and re-borrow revolving advances.

"Borrowing Base" means, as of any date of its determination by the Lender, 80% of the value of the Eligible Accounts (defined herein) of the Borrower.

"Eligible Accounts" means, with respect to the Borrower and as of any date of its determination by the Lender, the accounts receivable of such Borrower which are reflected on the balance sheet of such Borrower as of such date in accordance with generally accepted accounting principles, excluding, however:

(a)      accounts receivable in which the Lender does not have a first priority perfected security interest (including accounts receivable governed by the Federal Assignment of Claims Act unless properly assigned pursuant to that ACT) and accounts receivable which are not "accounts" as such term is defined in the Virginia Uniform Commercial Code (including those represented by any promissory note, trade acceptance, chattel paper, draft, or other instrument);

(b)      accounts receivable which did not arise from an enforceable order or contract for the absolute and final sale of the inventory or services of the Borrower or accounts receivable for which the sales or services have not been fully performed in the ordinary course of business of the Borrower;

(c)      accounts receivable which are older than 120 days after the date of the invoice that generated such accounts receivable;

(d)      accounts receivable which are subject to any contest or offset, including contra accounts, or which have been disputed;

(e)      accounts receivable which were not generated in an arm's length transaction or are accounts receivable from any affiliate of the Borrower and any accounts receivable which have already been included as Eligible Accounts from such affiliates;

(f)      accounts receivable which are otherwise unacceptable as collateral, including foreign and bonded, as determined by the Lender according to the reasonable policies of the Lender.

(g)      bonded receivables will be allowed to a maximum limit of $1,000,000.00.

# PROMISSORY NOTE
## (Continued)

Loan No: 52-01-000220                                                                      Page 3

**DEPOSIT ACCOUNT REQUIREMENTS.** You agree to establish and maintain the primary operating account of Borrower with Lender. You agree to establish and utilize Sona-24/7 for the life of these credit offerings. In the event that any main or primary operating accounts are not maintained with Lender, the effective interest rates will be increased by 1.0% over the rates noted in the loan documents.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Sonabank, N.A. Warrenton Loan Production Office 550 Broadview Avenue Warrenton, VA 20186.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

BORROWER:

FLOORING SOLUTIONS, INC.

By: _____ (Seal)
Fazeel M. Syed, President of Flooring Solutions, Inc.

LASER PRO Lending, Ver. 5.39.00.008 Copr. Harland Financial Solutions, Inc. 1997, 2006.   All Rights Reserved.  - VA  z:\CFI\LPL\D20.FC  TR-1136  PR-22

Prepared by:
Sonabank
550 Broadview Ave, #LL
Warrenton, Va 20186

**AMENDMENT TO NOTE**

Date:   October 21, 2009

Sonabank Loan # 52-01000220

BORROWER:   Flooring Solutions, Inc.
AMOUNT OF ORIGINAL NOTE: $3,000,000.00
DATE OF ORIGINAL NOTE: June 16, 2008
ORIGINAL MATURITY DATE: December 16, 2009
Modified:  July 17, 2009 -  Lockbox put on Sonabank SABL System

Amendments to Note are as follows:

1.  **The loan amount is being increased by $500,000.00 to a total loan of $3,500,000.00 while the Letter of Credit #100110 is still effective.  At such time as the letter of credit is released and bank is in possession of the original, the loan amount will be reduced to $3,000,000.00 and the hold on $1,000,000.00 will be released.**
2.  **The maturity date is being extended to June 16, 2011.**
3.  **There will be a $1,000,000.00 hold on funds on this loan until the letter of credit is released and the bank is in possession of the original.**
4.  **All proceeds from the Clark Construction Group, LLC contract will automatically be sent to the lockbox and will reduce the loan amount.  Any future draws will need to be sent to Marie Leibson and approved prior to funding.**

ALL OTHER TERMS REMAIN UNCHANGED.

Fees incurred with this Amendment are as follows and are to be collected at time of signature.

Loan Fee:  -$17,500.00-
Document Preparation:  -$300
Letter of Credit Fee: $20,00.00
Debit fees from account # 420000762

SIGNATURES ON NEXT PAGE

Page 1 of 2

Page 2 of 2

Flooring Solutions, Inc.                    Sonabank

_Renee Rump POA_

BY: Fazeel M. Syed, President         Marie Leibson  Senior Vice President

GUARANTORS:

F-S Trading, Inc.   _Renee Rump POA_      _Renee Rump POA_

BY: Fazeel M. Syed, President           Fazeel M. Syed, Individually

COMMONWEALTH OF VIRGINIA
CITY/COUNTY OF _Fauquier_, to wit:

The foregoing Amendment was acknowledged before me in the foregoing jurisdiction
this 21st day of _Oct_, 2009 by Fazeel M. Syed, _by POA Renee Rump_

_Kerri Kendall_
Notary Public

My commission expires: _11/1/2011_
Registration # _286467_

KERRI KENDALL
NOTARY PUBLIC
REGISTRATION # 286467
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES NOVEMBER 01, 2011

Prepared by:
**Sonabank**
**550 Broadview Ave, #LL**
**Warrenton, Va 20186**

**AMENDMENT TO NOTE**

**Date:   April 15, 2010**

**Sonabank Loan # 52-01000220**

BORROWER:    Flooring Solutions, Inc.____
AMOUNT OF ORIGINAL NOTE: $3,000,000.00____
DATE OF ORIGINAL NOTE: _June 16, 2008_.
ORIGINAL MATURITY DATE:  December 16, 2009
Modified:  July 17, 2009 - Lockbox put on Sonabank SABL System

Amendments to Note are as follows:

1.   **Letter of Credit #100114 in the amount of $31,000 is being placed under this line for 90 days. There will be a $31,000.00 hold on funds for this letter of credit  until the letter of credit is released and the bank is in possession of the original.**

ALL OTHER TERMS REMAIN UNCHANGED.

Fees incurred with this Amendment are as follows and are to be collected at time of signature.

**Letter of Credit Fee:  -$620.00-_____**
**Document Preparation:  -$100_**
Debit fees from account # 420000762

SIGNATURES ON NEXT PAGE

Page 1 of 2

Page 2 of 2

Flooring Solutions, Inc.

BY: Fazeel M. Syed, President

Sonabank

Marie Leibson  Senior Vice President

GUARANTORS:

F S Trading, Inc.

BY: Fazeel M. Syed, President

Fazeel M. Syed, Individually

COMMONWEALTH OF <u>VIRGINIA</u>
CITY/COUNTY OF <u>Loudoun</u>    ; to wit:

The foregoing Amendment was acknowledged before me in the foregoing jurisdiction this _15_ day of _April_  2010, by Fazeel M. Syed. ___.

Monica D Quinn
Notary Public

My commission expires: _06/30/13_
Registration # _7251799_

MONICA D. QUINN
NOTARY PUBLIC
REG # 7251799
MY COMMISSION
EXPIRES
06/30/13
COMMONWEALTH OF VIRGINIA

**Prepared by:**
**Sonabank**
**550 Broadview Ave, #LL**
**Warrenton, Va 20186**

### AMENDMENT TO NOTE

**Date:  March 18, 2011**

**Sonabank Loan # 52-01000220**

BORROWER:    Flooring Solutions, Inc._____
AMOUNT OF ORIGINAL NOTE: $3,000,000.00_____
DATE OF ORIGINAL NOTE: _June 16, 2008
ORIGINAL MATURITY DATE:  December 16, 2009
Modified:  July 17, 2009 -  Lockbox put on Sonabank SABL System
Modified: October 21, 2009 – increased loan/extended maturity
Modified:  April 15, 2010 – adding  letter of credit

Amendments to Note are as follows:

1. **There will be a floor rate of 6.5% on this loan effective March 1, 2011.**
2. **Salary limitation reduced on Fazeel Syed to $250,000 per annum effective April 2011.**
3. **Borrower to provide listing agreements for the building and adjacent land lot.**

ALL OTHER TERMS REMAIN UNCHANGED.

Fees incurred with this Amendment are as follows and are to be collected at time of signature.

Fee:  -$0.00-_____
Document Preparation:  -$0__

Debit fees from account # 420000762

SIGNATURES ON NEXT PAGE

Page 1 of 2

Page 2 of 2

Flooring Solutions, Inc.

BY: Fazeel M. Syed, President

Sonabank

Marie L Gibson  Senior Vice President

GUARANTORS:

F S Trading, Inc.

BY: Fazeel M. Syed, President

Fazeel M. Syed, Individually

COMMONWEALTH OF VIRGINIA

CITY/COUNTY OF _Loudoun_ ; to wit:

The foregoing Amendment was acknowledged before me in the foregoing jurisdiction this 21 day of March 2011m, by Fazeel M. Syed.___

Notary Public

My commission expires: 06/30/13

Registration # 7251799

MONICA D. QUINN
NOTARY
PUBLIC
REG # 7251799
MY COMMISSION
EXPIRES
06/30/13
COMMONWEALTH OF VIRGINIA

Prepared by:
Sonabank
550 Broadview Ave, #LL
Warrenton, Va 20186

**AMENDMENT TO NOTE**

Date:  May 27, 2011

Sonabank Loan # 52-01000220

BORROWER:   Flooring Solutions, Inc.____
AMOUNT OF ORIGINAL NOTE: $3,000,000.00____
DATE OF ORIGINAL NOTE:  June 16, 2008
ORIGINAL MATURITY DATE:  December 16, 2009
Modified:  July 17, 2009 - Lockbox put on Sonabank SABL System
Modified: October 21, 2009 – increased loan/extended maturity
Modified:  April 15, 2010 – adding  letter of credit
Modified:  Floor rate, salary limitation, listing agreements for lot

Amendments to Note are as follows:

1.  **The loan will be increased by $400,000.00 to a total loan amount of $3,400,000.00 for a period of 60 days – maturing July 27, 2011.  When payment is made in 60 days to line of $400,000.00 – the line will be reduced to $3,000,000.00.**
2.  **Collateral being added is an assignment of Fazeel M. Syed's 2010 amended Federal Tax Return  and Fazeel M. Syed and Fariha Bashir's amended Federal Tax Returns for the years 2008 and  2009.**
3.  **The borrowing base will include "Other" collateral at a value of $400,000.00 for the 60 days. At the time the line is reduced to $3,000,000.00 – the "other" collateral will be removed.**

ALL OTHER TERMS REMAIN UNCHANGED.

Fees incurred with this Amendment are as follows and are to be collected at time of signature.

| | |
|---|---|
| Fee:  -$2000.00- | |
| Document Preparation:  -$150_ | |
| UCC search: $73.50 | |
| UCC filing - $20.00   ·  TOTAL FEES: $2,243.50 | |
| Debit fees from account # 420000762 | |

SIGNATURES ON NEXT PAGE

Page 1 of 2

Page 2 of 2

Flooring Solutions, Inc.                                      Sonabank

_____                    _____
BY: Fazeel M. Syed,  President             Marie Leibson  Senior Vice President


GRANTOR:

M _____
Fariha Bashir, Individually


GUARANTORS:

F S Trading, Inc.

_____                    _____
BY: Fazeel M. Syed President               Fazeel M. Syed, Individually


COMMONWEALTH OF VIRGINIA
CITY/COUNTY OF Prince William to wit:

   The foregoing Amendment was acknowledged before me in the foregoing jurisdiction
this 27 day of may 2011, by Fazeel M. Syed. ____.

                                           _____
                                           Notary Public

                                  My commission expires: 11-30-12
                                  Registration # 7217754

KRISTINA LEE DELLEO
NOTARY PUBLIC
REGISTRATION # 7217754
COMMONWEALTH OF VIRGINIA
My Comm Expires Nov 30 2012

Prepared by:
**Sonabank**
**550 Broadview Ave, #LL**
**Warrenton, VA 20186**

**AMENDMENT TO NOTE**

Date:  **March 1, 2012**

**Sonabank Loan # 52-01000220**

BORROWER:    Flooring Solutions, Inc.
AMOUNT OF ORIGINAL NOTE: $3,000,000.00
DATE OF ORIGINAL NOTE: June 16, 2008
ORIGINAL MATURITY DATE:  December 16, 2009
Modified:  July 17, 2009 - Lockbox put on Sonabank SABL System
Modified:  October 21, 2009 – increased loan/extended maturity
Modified:  April 15, 2010 – adding  letter of credit
Modified:  Floor rate, salary limitation, listing agreements for lot
Modified:  Increased loan/added collateral/borrowing base change
Modified:  extended increase for 60 days to Oct. 27, 2011
Modified:  increase for 60 days
Modified:  increase for 60 days
Modified:  increase for 60 days

Amendments to Note are as follows:

1.  **A second lien deed of trust on property 22445 Powers Court, Sterling, Virginia is being placed on this loan.  Sonabank holds the 1st lien deed of trust.**
2.  **Borrower is no longer required to assign tax refunds to Sonabank and will be removed from the SABL borrowing base as "other" collateral.**

ALL OTHER TERMS REMAIN UNCHANGED.

Fees incurred with this Amendment are as follows and are to be collected at time of signature.

| Fee:  -$0-_____ |
| --- |
| **Document Preparation: $100** |
| **Title Search & recording:  $400.00** |
| Debit fees from account # 420000762 |

SIGNATURES ON NEXT PAGE

Page 1 of 2

Page 2 of 2

Flooring Solutions, Inc.

BY: Fazeel M. Syed, President

Sonabank

Marie Leibson  Senior Vice President

GUARANTORS:

F S Trading, Inc.

BY: Fazeel M. Syed, President

Fazeel M. Syed, Individually

COMMONWEALTH OF <u>VIRGINIA</u>
CITY/COUNTY OF _____ ; to wit:

The foregoing Amendment was acknowledged before me in the foregoing jurisdiction this 5ᵗʰ day of March 2012, by Fazeel M. Syed.

_____
Notary Public

My commission expires: September 30, 2012
Registration # September 30, 2012
                      293445

ERIK SEPPALA
NOTARY ID #293445
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES SEPTEMBER 30, 2012

Prepared by:
**Sonabank**
**550 Broadview Ave, #LL**
**Warrenton, VA 20186**

**AMENDMENT TO NOTE**

Date:  December 5, 2012

Sonabank Loan # 52-01000220

BORROWER:    Flooring Solutions, Inc.
AMOUNT OF ORIGINAL NOTE: $3,000,000.00
DATE OF ORIGINAL NOTE: June 16, 2008
ORIGINAL MATURITY DATE:  December 16, 2009
Modified:  July 17, 2009 - Lockbox put on Sonabank SABL System
Modified: October 21, 2009 – increased loan/extended maturity
Modified:  April 15, 2010 – adding  letter of credit
Modified:  Floor rate, salary limitation, listing agreements for lot
Modified:  Increased loan/added collateral/borrowing base change
Modified:  extended increase for 60 days to Oct. 27, 2011
Modified:  increase for 60 days
Modified:  increase for 60 days
Modified:  increase for 60 days
Modified: added collateral, release of tax refund collateral

Amendments to Note are as follows:

1.    The maturity date is extended to January 27, 2013.


ALL OTHER TERMS REMAIN UNCHANGED.

Fees incurred with this Amendment are as follows and are to be collected at time of signature.

| |
|---|
| Fee:   -$0-<br>**Document Preparation: $0**<br>Debit fees from account # 420000762 |

SIGNATURES ON NEXT PAGE


Page 1 of 2

Page 2 of 2

Flooring Solutions, Inc.                              Sonabank

_____        _____
BY: Fazeel M. Syed, President        Marie Leibson  Senior Vice President


GUARANTORS:

F S Trading, Inc.

_____        _____
BY: Fazeel M. Syed, President        Fazeel M. Syed, Individually


COMMONWEALTH OF <u>VIRGINIA</u>
CITY/COUNTY OF <u>Loudon</u>        ; to wit:

        The foregoing Amendment was acknowledged before me in the foregoing jurisdiction
this <u>6</u> day of <u>Dec.</u>  2012, by Fazeel M. Syed.

                _____
                        Notary Public

┌─────────────────────────────┐
│   EUGENE ZOSA BOOKER JR.    │   My commission expires: <u>10 /31/ 2013</u>
│       Notary Public         │   Registration # <u>7237330</u>
│   Commonwealth of Virginia  │
│          7237330            │
│ My Commission Expires Oct 31, 2013 │
└─────────────────────────────┘

Prepared by:
Sonabank
550 Broadview Ave, #LL
Warrenton, VA 20186

**AMENDMENT TO NOTE**

Date:  January 25, 2013

Sonabank Loan # 52-01000220

BORROWER:    Flooring Solutions, Inc.
AMOUNT OF ORIGINAL NOTE: $3,000,000.00
DATE OF ORIGINAL NOTE: June 16, 2008
ORIGINAL MATURITY DATE:  December 16, 2009
Modified:  July 17, 2009 - Lockbox put on Sonabank SABL System
Modified: October 21, 2009 – increased loan/extended maturity
Modified:  April 15, 2010 – adding  letter of credit
Modified:  Floor rate, salary limitation, listing agreements for lot
Modified:  Increased loan/added collateral/borrowing base change
Modified:  extended increase for 60 days to Oct. 27, 2011
Modified:  increase for 60 days
Modified:  increase for 60 days
Modified:  increase for 60 days
Modified:  added collateral, release of tax refund collateral
Modified:  extended to Jan 27, 2013

Amendments to Note are as follows:

   1.    **The maturity date is extended to February 27, 2013.**


ALL OTHER TERMS REMAIN UNCHANGED.

Fees incurred with this Amendment are as follows and are to be collected at time of signature.

| |
|---|
| Fee:   -$0-  |
| **Document Preparation: $0** |
| Debit fees from account # 420000762 |

SIGNATURES ON NEXT PAGE


Page 1 of 2

Page 2 of 2

Flooring Solutions, Inc.                                    Sonabank

BY: Fazeel M. Syed, President          Marie Leibson  Senior Vice President


GUARANTORS:

F S Trading, Inc.

BY: Fazeel M. Syed, President          Fazeel M. Syed, Individually


COMMONWEALTH OF VIRGINIA
CITY/COUNTY OF _Loudoun_ ; to wit:

    The foregoing Amendment was acknowledged before me in the foregoing jurisdiction
this 25 day of January 2013, by Fazeel M. Syed.

                                        _Jacqueline L. Hatfield_
                                        Notary Public

My commission expires: 4-30-16
Registration # 7519585


Jacqueline L. Hatfield
NOTARY PUBLIC
Commonwealth of Virginia
Reg. #7519585
My Commission Expires
April 30, 2016

**Prepared by:**
**Sonabank**
**550 Broadview Ave, #LL**
**Warrenton, VA 20186**

### AMENDMENT TO NOTE

Date:  February 27, 2013

Sonabank Loan # 52-01000220

BORROWER:    Flooring Solutions, Inc.
AMOUNT OF ORIGINAL NOTE: $3,000,000.00
DATE OF ORIGINAL NOTE: June 16, 2008
ORIGINAL MATURITY DATE:  December 16, 2009
Modified:  July 17, 2009 - Lockbox put on Sonabank SABL System
Modified: October 21, 2009 – increased loan/extended maturity
Modified:  April 15, 2010 – adding  letter of credit
Modified:  Floor rate, salary limitation, listing agreements for lot
Modified:  Increased loan/added collateral/borrowing base change
Modified:  extended increase for 60 days to Oct. 27, 2011
Modified:  increase for 60 days
Modified:  increase for 60 days
Modified:  increase for 60 days
Modified: added collateral, release of tax refund collateral
Modified:  extended to Jan 27, 2013
Modified: extended to Feb. 27, 2013

Amendments to Note are as follows:

　　1.　**The maturity date is extended to March 27, 2013.**


ALL OTHER TERMS REMAIN UNCHANGED.

Fees incurred with this Amendment are as follows and are to be collected at time of signature.

| |
|---|
| Fee:   -$0-<br>**Document Preparation: $0**<br>Debit fees from account # 420000762 |

SIGNATURES ON NEXT PAGE


Page 1 of 2

Page 2 of 2

Flooring Solutions, Inc.                                    Sonabank

_____          _____
BY: Fazeel M. Syed, President                Marie Leibson  Senior Vice President


GUARANTORS:

F S Trading, Inc.

_____          _____
BY: Fazeel M. Syed, President                Fazeel M. Syed, Individually


COMMONWEALTH OF <u>VIRGINIA</u>
CITY/COUNTY OF <u>Loudoun</u> ; to wit:

    The foregoing Amendment was acknowledged before me in the foregoing jurisdiction
this 27th day of February 2013, by Fazeel M. Syed.

_____
                Notary Public

My commission expires: 4-30-16
Registration # 7519585


Jacqueline L. Hatfield
NOTARY PUBLIC
Commonwealth of Virginia
Reg. #7519585
My Commission Expires
April 30, 2016

Prepared by:
Sonabank
550 Broadview Ave, #LL
Warrenton, VA 20186

**AMENDMENT TO NOTE**

Date:  March 14, 2013

Sonabank Loan # 52-01000220

BORROWER:    Flooring Solutions, Inc.
AMOUNT OF ORIGINAL NOTE: $3,000,000.00
DATE OF ORIGINAL NOTE: June 16, 2008
ORIGINAL MATURITY DATE:  December 16, 2009
Modified: July 17, 2009 - Lockbox put on Sonabank SABL System
Modified: October 21, 2009 – increased loan/extended maturity
Modified: April 15, 2010 – adding  letter of credit
Modified: Floor rate, salary limitation, listing agreements for lot
Modified:  Increased loan/added collateral/borrowing base change
Modified: extended increase for 60 days to Oct. 27, 2011
Modified: increase for 60 days
Modified: increase for 60 days
Modified: increase for 60 days
Modified: added collateral, release of tax refund collateral
Modified: extended to Jan 27, 2013
Modified: extended to Feb. 27, 2013
Modified: extended to March 27, 2013

Amendments to Note are as follows:

1.  The maturity date is extended to March 27, 2014.
2.  Borrower to provide monthly financial statements, backlog and pipeline reports within 20
    days of month end.

ALL OTHER TERMS REMAIN UNCHANGED.

Fees incurred with this Amendment are as follows and are to be collected at time of signature.

Fee:  $17,000.00
Document Preparation: $100.00
Credit report:  $25.00
D&B Report:  $125.00
TOTAL:  $17,250.00

Debit fees from account # 420000762

SIGNATURES ON NEXT PAGE

Page 1 of 2

Page 2 of 2

Flooring Solutions, Inc.

_Syd Syed_

BY: Fazeel M. Syed, President

Sonabank

_Marie Leibson_

Marie Leibson  Senior Vice President.

GUARANTORS:

F S Trading, Inc.

_Syd Syed_

BY: Fazeel M. Syed, President

_Syd Syed_

Fazeel M. Syed, Individually

COMMONWEALTH OF VIRGINIA
CITY/COUNTY OF Loudoun ; to wit:

The foregoing Amendment was acknowledged before me in the foregoing jurisdiction this 8 day of March 2013, by Fazeel M. Syed.

_Jacqueline R. Hatfield_
Notary Public

My commission expires: 4-30-16
Registration # 7519585

Jacqueline L. Hatfield
NOTARY PUBLIC
Commonwealth of Virginia
Reg. #7519585
My Commission Expires
April 30, 2016

Prepared by:
**Sonabank**
**550 Broadview Ave, #LL**
**Warrenton, VA 20186**

**AMENDMENT TO NOTE**

**Date:  March 10, 2014**

**Sonabank Loan # 52-01000220**

BORROWER:    Flooring Solutions, Inc.
AMOUNT OF ORIGINAL NOTE: $3,000,000.00
DATE OF ORIGINAL NOTE: June 16, 2008
ORIGINAL MATURITY DATE:  December 16, 2009
Modified: July 17, 2009 - Lockbox put on Sonabank SABL System
Modified: October 21, 2009 – increased loan/extended maturity
Modified: April 15, 2010 – adding  letter of credit
Modified:  Floor rate, salary limitation, listing agreements for lot
Modified:  Increased loan/added collateral/borrowing base change
Modified: extended increase for 60 days to Oct. 27, 2011
Modified:  increase for 60 days
Modified:  increase for 60 days
Modified:  increase for 60 days
Modified: added collateral, release of tax refund collateral
Modified:  extended to Jan 27, 2013
Modified: extended to Feb. 27, 2013
Modified: extended to March 27, 2013
Modified: extended to March 27, 2014

Amendments to Note are as follows:

1.  **The maturity date is extended to March 27, 2015.**
2.  **Line of credit is being increased to $3,902,000.00.  This is an increase of $502,000.00.**
3.  **There will be a $502,000.00 hold on funds which will be used for a letter of credit that will be issued at a later date.**
4.  **Add M'Armore, Inc. as a corporate guarantor on this loan.**
5.  **Add $502,000.00 to borrowing base for Whitting Turner GMU Fenwick Phase II**
6.  **A/R from GMU Fenwick Phase II that the letter of credit (to be issued) is supporting is to be excluded from the borrowing base**
7.  **A new lockbox account has been opened, account #420001018.  Receipts from GMU Fenwick Phase II will need to be deposited into this account.  When the letter of credit that is being issued is released, balance will be applied to outstanding line of credit balance.**

ALL OTHER TERMS REMAIN UNCHANGED.

Fees incurred with this Amendment are as follows and are to be collected at time of signature.

**Fee:  $19,510.00**
**Document Preparation: $100.00**
**TOTAL: $19,610.00**

Debit fees from account # 420000762

SIGNATURES ON NEXT PAGE
Page 1 of 2

Flooring Solutions, Inc.

BY: Fazeel M. Syed, President

Sonabank

Marie Leibson  Senior Vice President

GUARANTORS:

F S Trading, Inc.

BY: Fazeel M. Syed, President

Fazeel M. Syed, Individually

COMMONWEALTH OF VIRGINIA
CITY/COUNTY OF _Loudoun_  ; to wit:

The foregoing Amendment was acknowledged before me in the foregoing jurisdiction
this 11th day of _March_ 2014, by Fazeel M. Syed.

Notary Public

My commission expires: 4-30-16
Registration # _7519585_

Page 2 of 2

Jacqueline L. Hatfield
NOTARY PUBLIC
Commonwealth of Virginia
Reg. #7519585
My Commission Expires
April 30, 2016

Prepared by:    Sharon Tyson
Sonabank
550 Broadview Ave, #LL
Warrenton, VA 20186

**AMENDMENT TO NOTE**

Date:  November 6, 2014

Sonabank Loan # 52-01000220

BORROWER:    Flooring Solutions, Inc.
AMOUNT OF ORIGINAL NOTE: $3,000,000.00
DATE OF ORIGINAL NOTE: June 16, 2008
ORIGINAL MATURITY DATE:  December 16, 2009
Modified: July 17, 2009 - Lockbox put on Sonabank SABL System
Modified: October 21, 2009 – increased loan/extended maturity
Modified: April 15, 2010 – adding letter of credit
Modified: Floor rate, salary limitation, listing agreements for lot
Modified: Increased loan/added collateral/borrowing base change
Modified: extended increase for 60 days to Oct. 27, 2011
Modified: increase for 60 days
Modified: increase for 60 days
Modified: increase for 60 days
Modified: added collateral, release of tax refund collateral
Modified: extended to Jan 27, 2013
Modified: extended to Feb. 27, 2013
Modified: extended to March 27, 2013
Modified: extended to March 27, 2014
Modified: extended to March 27, 2015.  Increased to $3,902,000.00,  Add M'Armore as corporate
guarantor-additional changes were made-see last amendment

Amendments to Note are as follows:

1.  A letter of credit (100166) will be issued in the amount of $17,000.00 in favor of Holder
    Construction Group, LLC.  Expiration date of Letter of Credit is November 14, 2015.
2.  The line availability will be reduced by $17,000.00 until the letter of credit is returned.

ALL OTHER TERMS REMAIN UNCHANGED.

Fees incurred with this Amendment are as follows and are to be collected at time of signature

Issuance Fee:  $250.00
Document Preparation: $100.00
Loan Fee: $340.00
TOTAL: $690.00

Debit fees from account # 420000762

SIGNATURES ON NEXT PAGE

Page 1 of 2

Page 2 of 2

Flooring Solutions, Inc.                                    Sonabank

BY: Fazeel M. Syed, President          Marie Leibson  Senior Vice President

GUARANTORS:

F S Trading, Inc.

BY: Fazeel M. Syed, President                Fazeel M. Syed, Individually

COMMONWEALTH OF <u>VIRGINIA</u>
CITY/COUNTY OF <u>Loudoun</u> ; to wit:

The foregoing Amendment was acknowledged before me in the foregoing jurisdiction
this 12th day of November 2014, by Fazeel M. Syed.

Notary Public

My commission expires: 4-30-16
Registration # 7519585

Jacqueline L. Hatfield
NOTARY PUBLIC
Commonwealth of Virginia
Reg. #7519585
My Commission Expires
April 30, 2016

Prepared by:   Sharon Tyson
**Sonabank**
**550 Broadview Ave, #LL**
**Warrenton, VA 20186**

AMENDMENT TO NOTE

Date:  **March 25, 2015**

**Sonabank Loan # 52-01000220**

BORROWER:   Flooring Solutions, Inc.
AMOUNT OF ORIGINAL NOTE: $3,000,000.00
DATE OF ORIGINAL NOTE: June 16, 2008
ORIGINAL MATURITY DATE:  December 16, 2009
Modified:  July 17, 2009 - Lockbox put on Sonabank SABL System
Modified:  October 21, 2009 – increased loan/extended maturity
Modified:  April 15, 2010 – adding  letter of credit
Modified:  Floor rate, salary limitation, listing agreements for lot
Modified:  Increased loan/added collateral/borrowing base change
Modified:  extended increase for 60 days to Oct. 27, 2011
Modified:  increase for 60 days
Modified:  increase for 60 days
Modified:  increase for 60 days
Modified: added collateral, release of tax refund collateral
Modified:  extended to Jan 27, 2013
Modified: extended to Feb. 27, 2013
Modified: extended to March 27, 2013
Modified: extended to March 27, 2014
Modified: extended to March 27, 2015.  Increased to $3,902,000.00,  Add M'Armore as corporate
guarantor-additional changes were made-see last amendment
Modified: Letter of credit issued in the amount of $17,000.00-line availability reduced until LOC returned
Modified: Letter of credit issued in the amount of $100,000-availabilty reduced until LOC returned

Amendments to Note are as follows:

    1.   **Maturity date is extended to April 27, 2015.**

ALL OTHER TERMS REMAIN UNCHANGED.

Fees incurred with this Amendment are as follows and are to be collected at time of signature.

---

**Document Preparation: $0**
**Loan Fee: $0**
**March 27, 2015 interest due: $18,874.78**
**TOTAL:  $18,874.78 (debit from 420000762)**

---

SIGNATURES ON NEXT PAGE

Page 1 of 2

Page 2 of 2

Flooring Solutions, Inc.

BY: Fazeel M. Syed, President

Sonabank

Marie Leipson  Senior Vice President

GUARANTORS:

F S Trading, Inc.

BY: Fazeel M. Syed, President

Fazeel M. Syed, Individually

COMMONWEALTH OF <u>VIRGINIA</u>
CITY/COUNTY OF _____ ; to wit:

The foregoing Amendment was acknowledged before me in the foregoing jurisdiction this 25 day of March 2015, by Fazeel M. Syed.

_____
Notary Public

```
NICOLE L YOUNG
NOTARY PUBLIC
REGISTRATION # 7592267
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES
MAY 31, 2018
```

My commission expires: May 31, 2018
Registration # 7592267

5403474572                                                    10:40:37 a.m.    04-10-2015    1 /2

Prepared by:    Sharon Tyson
Sonabank
550 Broadview Ave, #LL
Warrenton, VA 20186

                                    AMENDMENT TO NOTE

Date: April 9, 2015

Sonabank Loan # 52-01000220

BORROWER:    Flooring Solutions, Inc.
AMOUNT OF ORIGINAL NOTE: $3,000,000.00
DATE OF ORIGINAL NOTE: June 16, 2008
ORIGINAL MATURITY DATE: December 16, 2009
Modified:  July 17, 2009 - Lockbox put on Sonabank SABL System
Modified: October 21, 2009 – increased loan/extended maturity
Modified: April 15, 2010 – adding  letter of credit
Modified: Floor rate, salary limitation, listing agreements for lot
Modified: Increased loan/added collateral/borrowing base change
Modified: extended increase for 60 days to Oct. 27, 2011
Modified: increase for 60 days
Modified: increase for 60 days
Modified: increase for 60 days
Modified: added collateral, release of tax refund collateral
Modified:  extended to Jan 27, 2013
Modified: extended to Feb. 27, 2013
Modified: extended to March 27, 2013
Modified: extended to March 27, 2014
Modified: extended to March 27, 2015.  Increased to $3,902,000.00,  Add M'Armore as corporate
guarantor-additional changes were made-see last amendment
Modified: Letter of credit issued in the amount of $17,000.00-line availability reduced until LOC returned
Modified: Letter of credit issued in the amount of $100,000-availabilty reduced until LOC returned
Modified: extended to April 27, 2015

Amendments to Note are as follows:

    1.    Lender has approved a temporary increase to $4,000,000.00 until April 17, 2015.


ALL OTHER TERMS REMAIN UNCHANGED.

Fees incurred with this Amendment are as follows and are to be collected at time of signature.

┌─────────────────────────────────────────────────────────────────┐
│ Document Preparation: $0                                          │
│ Loan Fee: $500.00                                                 │
│ TOTAL:  $500.00 (debit from 420000762)                            │
│                                                                   │
└─────────────────────────────────────────────────────────────────┘


SIGNATURES ON NEXT PAGE


Page 1 of 2

5403474572                                            10:40:57 a.m.   04-10-2015        2/2

Page 2 of 2

Flooring Solutions, Inc.                              Sonabank

BY: Fazeel M. Syed, President                Marie Leibson, Senior Vice President


GUARANTORS:

F S Trading, Inc.

BY: Fazeel M. Syed, President               Fazeel M. Syed, Individually


COMMONWEALTH OF <u>VIRGINIA</u>
CITY/COUNTY OF <u>Loudoun</u>   ; to wit:

The foregoing Amendment was acknowledged before me in the foregoing jurisdiction
this 10 day of April 2015, by Fazeel M. Syed.

                                    Notary Public

My commission expires: 4-30-16
Registration # 7519585


Jacqueline L. Hatfield
NOTARY PUBLIC
Commonwealth of Virginia
Reg. #7519585
My Commission Expires
April 30, 2016

5403474572                                                         04:42:15 p.m.      04-27-2015          2/3

Prepared by:    Wendy Davis
Sonabank
550 Broadview Ave, #LL
Warrenton, VA 20186

## AMENDMENT TO NOTE

Date:   April 27, 2015

Sonabank Loan # 52-01000220

BORROWER:    Flooring Solutions, Inc.
AMOUNT OF ORIGINAL NOTE: $3,000,000.00
DATE OF ORIGINAL NOTE: June 16, 2008
ORIGINAL MATURITY DATE:   December 16, 2009
Modified: July 17, 2009 - Lockbox put on Sonabank SABL System
Modified: October 21, 2009 – increased loan/extended maturity
Modified: April 15, 2010 – adding  letter of credit
Modified: Floor rate, salary limitation, listing agreements for lot
Modified: Increased loan/added collateral/borrowing base change
Modified: extended increase for 60 days to Oct. 27, 2011
Modified: increase for 60 days
Modified: increase for 60 days
Modified: increase for 60 days
Modified: added collateral, release of tax refund collateral
Modified: extended to Jan 27, 2013
Modified: extended to Feb. 27, 2013
Modified: extended to March 27, 2013
Modified: extended to March 27, 2014
Modified: extended to March 27, 2015.  Increased to $3,902,000.00,  Add M'Armore as corporate
guarantor-additional changes were made-see last amendment
Modified: Letter of credit issued in the amount of $17,000.00-line availability reduced until LOC returned
Modified: Letter of credit issued in the amount of $100,000-availabilty reduced until LOC returned
Modified: Maturity date is extended to April 27, 2015

Amendments to Note are as follows:

1.    **Maturity date is extended to May 27, 2015.**


ALL OTHER TERMS REMAIN UNCHANGED.

Fees incurred with this Amendment are as follows and are to be collected at time of signature.

Document Preparation: $0
Loan Fee: $0
April 27, 2015 interest due: $20,043.06
TOTAL:  $20,043.06 (debit from 420000762)

SIGNATURES ON NEXT PAGE

Page 1 of 2

5403474572                                              04:42:36 p.m.   04-27-2015      3/3

Page 2 of 2

Flooring Solutions, Inc.

BY: Fazeel M. Syed, President

Sonabank

Marie Taylor Leitson Sr. Vice President

GUARANTORS:

F S Trading, Inc.

BY: Fazeel M. Syed, President

Fazeel M. Syed, Individually

COMMONWEALTH OF VIRGINIA
CITY/COUNTY OF _Loudain_ ; to wit:

The foregoing Amendment was acknowledged before me in the foregoing jurisdiction this 27th day of _April_ 2015, by Fazeel M. Syed.

_Cnr Imloden_
Notary Public

My commission expires: _Feb. 29, 2016_
Registration # _7513923_

CHERISE MARIE IMBODEN
Notary Public
Commonwealth of Virginia
7513923
My Commission Expires Feb 29, 2016

Prepared by:    Wendy Davis
**Sonabank**
**550 Broadview Ave, #LL**
**Warrenton, VA 20186**
                                    **AMENDMENT TO NOTE**

**Date:  May 28, 2015**

**Sonabank Loan # 52-01000220**

BORROWER:    Flooring Solutions, Inc.
AMOUNT OF ORIGINAL NOTE: $3,000,000.00
DATE OF ORIGINAL NOTE: June 16, 2008
ORIGINAL MATURITY DATE:  December 16, 2009
Modified:  July 17, 2009 - Lockbox put on Sonabank SABL System
Modified:  October 21, 2009 – increased loan/extended maturity
Modified:  April 15, 2010 – adding  letter of credit
Modified:  Floor rate, salary limitation, listing agreements for lot
Modified:  Increased loan/added collateral/borrowing base change
Modified:  extended increase for 60 days to Oct. 27, 2011
Modified:  increase for 60 days
Modified:  increase for 60 days
Modified:  increase for 60 days
Modified: added collateral, release of tax refund collateral
Modified:  extended to Jan 27, 2013
Modified: extended to Feb. 27, 2013
Modified: extended to March 27, 2013
Modified: extended to March 27, 2014
Modified: extended to March 27, 2015.  Increased to $3,902,000.00,  Add M'Armore as corporate
guarantor-additional changes were made-see last amendment
Modified: Letter of credit issued in the amount of $17,000.00-line availability reduced until LOC returned
Modified: Letter of credit issued in the amount of $100,000-availabilty reduced until LOC returned
Modified: Maturity date is extended to April 27, 2015
Modified: Maturity date is extended to May 27, 2015

Amendments to Note are as follows:

    1.   **Maturity date is extended to May 27, 2016.**

ALL OTHER TERMS REMAIN UNCHANGED.

Fees incurred with this Amendment are as follows and are to be collected at time of signature.

**Document Preparation: $100.00**
**Loan Fee: $19,510.00**
**May 27, 2015 interest due: $21,313.86**
**Credit report: $25.00**
**D&B Report: $95.00**
**TOTAL:  $41,043.86 (debit from 420000762)**

**SIGNATURES AND NOTARY VERIFICATION ON NEXT PAGE**

Page 1 of 2

Page 2 of 2

Flooring Solutions, Inc.

X _____
BY: Fazeel M. Syed, President

Sonabank

_____
Marie Taylor Leibson  Sr. Vice President

GUARANTORS:

F S Trading Inc.

X _____
BY:  Fazeel M. Syed, President

_____
Fazeel M. Syed, Individually

COMMONWEALTH OF VIRGINIA
CITY/COUNTY OF Fauquier  ; to wit:

The foregoing Amendment was acknowledged before me in the foregoing jurisdiction this 28 day of May 2015, by Fazeel M. Syed.

_____
Notary Public

My commission expires: May 31, 2018

Registration # 7592267

NICOLE L YOUNG
NOTARY PUBLIC
REGISTRATION # 7592267
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES
MAY 31, 2018

Prepared by:     Wendy Davis
Sonabank
550 Broadview Ave, #LL
Warrenton, VA 20186                          AMENDMENT TO NOTE

Date:  June 17, 2015

Sonabank Loan # 52-01000220

BORROWER:    Flooring Solutions, Inc.
AMOUNT OF ORIGINAL NOTE: $3,000,000.00
DATE OF ORIGINAL NOTE: June 16, 2008
ORIGINAL MATURITY DATE:  December 16, 2009
Modified:  July 17, 2009 - Lockbox put on Sonabank SABL System
Modified: October 21, 2009 – increased loan/extended maturity
Modified:  April 15, 2010 – adding letter of credit
Modified:  Floor rate, salary limitation, listing agreements for lot
Modified:  Increased loan/added collateral/borrowing base change
Modified:  extended increase for 60 days to Oct. 27, 2011
Modified:  increase for 60 days
Modified:  increase for 60 days
Modified:  increase for 60 days
Modified: added collateral, release of tax refund collateral
Modified:  extended to Jan 27, 2013
Modified: extended to Feb. 27, 2013
Modified: extended to March 27, 2013
Modified: extended to March 27, 2014
Modified: extended to March 27, 2015.  Increased to $3,902,000.00, Add M'Armore as corporate
guarantor-additional changes were made-see last amendment
Modified: Letter of credit issued in the amount of $17,000.00-line availability reduced until LOC returned
Modified: Letter of credit issued in the amount of $100,000-availabilty reduced until LOC returned
Modified: Maturity date is extended to April 27, 2015
Modified: Maturity date is extended to May 27, 2015
Modified: Maturity date is extended to May 27, 2016

Amendments to Note are as follows:

1.   **Maximum credit limit will be increased by $250,000.00 to $4,152,000.00. On July 31,
     2015 the maximum credit limit will be reduced back to $3,902,000.00**

ALL OTHER TERMS REMAIN UNCHANGED.

Fees incurred with this Amendment are as follows and are to be collected at time of signature.

Document Preparation: $-0-
Loan Fee: $500.00
TOTAL:  $500.00 (debit from 420000762)

**SIGNATURES AND NOTARY VERIFICATION ON NEXT PAGE**

Page 2 of 2

Flooring Solutions, Inc.

_____
BY: Fazeel M. Syed, President

Sonabank

_____
Marie Taylor Leibson  Sr. Vice President

GUARANTORS:

F S Trading, Inc.

_____
BY: Fazeel M. Syed, President

_____
Fazeel M. Syed, Individually

COMMONWEALTH OF <u>VIRGINIA</u>
CITY/COUNTY OF <u>Loudoun</u> ; to wit:

The foregoing Amendment was acknowledged before me in the foregoing jurisdiction this 18th day of June 2015, by Fazeel M. Syed.

_____
Notary Public

My commission expires: 4-30-16
Registration # 7519585

Jacqueline L. Hatfield
NOTARY PUBLIC
Commonwealth of Virginia
Reg. #7519585
My Commission Expires
April 30, 2016

Prepared by:   Sharon Tyson
**Sonabank**
**550 Broadview Ave, #LL**
**Warrenton, VA 20186**

## AMENDMENT TO NOTE

Date:  August 31, 2015

Sonabank Loan # 52-01000220

BORROWER:   Flooring Solutions, Inc.
AMOUNT OF ORIGINAL NOTE: $3,000,000.00
DATE OF ORIGINAL NOTE: June 16, 2008
ORIGINAL MATURITY DATE:  December 16, 2009
Modified:  July 17, 2009 - Lockbox put on Sonabank SABL System
Modified:  October 21, 2009 – increased loan/extended maturity
Modified:  April 15, 2010 – adding letter of credit
Modified:  Floor rate, salary limitation, listing agreements for lot
Modified:  Increased loan/added collateral/borrowing base change
Modified:  extended increase for 60 days to Oct. 27, 2011
Modified:  increase for 60 days
Modified:  increase for 60 days
Modified:  increase for 60 days
Modified:  added collateral, release of tax refund collateral
Modified:  extended to Jan 27, 2013
Modified:  extended to Feb. 27, 2013
Modified:  extended to March 27, 2013
Modified:  extended to March 27, 2014
Modified:  extended to March 27, 2015.  Increased to $3,902,000.00, Add M'Armore as corporate
guarantor-additional changes were made-see last amendment
Modified:  Letter of credit issued in the amount of $17,000.00-line availability reduced until LOC returned
Modified:  Letter of credit issued in the amount of $100,000-availabilty reduced until LOC returned
Modified:  Maturity date is extended to April 27, 2015
Modified:  Maturity date is extended to May 27, 2015
Modified:  Maturity date is extended to May 27, 2016
Modified:  Maximum credit increased by $250,000 and reduced back to $3,902,000.00 on July 31, 2015.

Amendments to Note are as follows:

1.   **Maximum credit limit will be increased by $100,000.00 to $4,002,000.00 for 30 days.**

ALL OTHER TERMS REMAIN UNCHANGED.

Fees incurred with this Amendment are as follows and are to be collected at time of signature.

---

**Document Preparation: $-0-**
**Loan Fee: $0**
**TOTAL:  $0 (debit from 420000762)**

---

## SIGNATURES AND NOTARY VERIFICATION ON NEXT PAGE

Page 2 of 2

Flooring Solutions, Inc.

_(signature)_

BY: Fazeel M. Syed, President

Sonabank

_____

Marie Taylor Leibson  Sr. Vice President

GUARANTORS:

F S Trading Inc.

_(signature)_

BY:  Fazeel M. Syed, President

_(signature)_

Fazeel M. Syed, Individually

COMMONWEALTH OF VIRGINIA
CITY/COUNTY OF __Loudoun__ ; to wit:

The foregoing Amendment was acknowledged before me in the foregoing jurisdiction this 31 day of __August__ 2015, by Fazeel M. Syed.

_(signature)_
_____
Notary Public

My commission expires: __2/29/2016__
Registration # __7513923__

CHERISE MARIE IMBODEN
Notary Public
Commonwealth of Virginia
7513923
My Commission Expires Feb 29, 2016

Prepared by:    Wendy Davis
Sonabank
550 Broadview Ave, #LL
Warrenton, VA 20186

AMENDMENT TO NOTE

Date: June 29, 2016

Sonabank Loan # 52-01000220

BORROWER:    Flooring Solutions, Inc.
AMOUNT OF ORIGINAL NOTE: $3,000,000.00
DATE OF ORIGINAL NOTE: June 16, 2008
ORIGINAL MATURITY DATE:  December 16, 2009
Modified:  July 17, 2009 - Lockbox put on Sonabank SABL System
Modified: October 21, 2009 – increased loan/extended maturity
Modified:  April 15, 2010 – adding letter of credit
Modified:  Floor rate, salary limitation, listing agreements for lot
Modified:  Increased loan/added collateral/borrowing base change
Modified:  extended increase for 60 days to Oct. 27, 2011
Modified:  increase for 60 days
Modified:  increase for 60 days
Modified:  increase for 60 days
Modified: added collateral, release of tax refund collateral
Modified:  extended to Jan 27, 2013
Modified: extended to Feb. 27, 2013
Modified: extended to March 27, 2013
Modified: extended to March 27, 2014
Modified: extended to March 27, 2015.  Increased to $3,902,000.00, Add M'Armore as corporate
guarantor-additional changes were made-see last amendment
Modified: Letter of credit issued in the amount of $17,000.00-line availability reduced until LOC returned
Modified: Letter of credit issued in the amount of $100,000-availabilty reduced until LOC returned
Modified: Maturity date is extended to April 27, 2015
Modified: Maturity date is extended to May 27, 2015
Modified: Maturity date is extended to May 27, 2016
Modified: Maximum credit increased by $250,000 and reduced back to $3,902,000.00 on July 31, 2015.
Modified: Maximum credit limit will be increased by $100,000.00 to $4,002,000.00 for 30 days.
Modified: Maturity date is extended to June 27, 2016

Amendments to Note are as follows:

1.  This loan will be broken down into two parts-Sub-Note #1 and Sub-Note #2.
2.  Sub-Note #1will have a maximum credit limit of $3,602,000.00. The new maturity date will
be June 27, 2017.
3.  Sub-Note #2 will have a maximum credit limit of $400,000.00. The new maturity date will be
June 27, 2017.
4.  Sub-Note #1 and Sub-Note #2 will be cross collateralized, cross defaulted and cross
guaranteed with each other.

ALL OTHER TERMS REMAIN UNCHANGED.

SIGNATURES AND NOTARY VERIFICATION ON FOLLOWING PAGE

Page 2 of 2

Fees incurred with this Amendment are as follows and are to be collected at time of signature.

| |
|---|
| **Loan fee: $20,010.00**<br>**Document Preparation: $100.00**<br>**Interest due through June 27, 2016: $42,955.10**<br>**Credit report fee: $25.00**<br>**Dunn & Bradstreet report: $125.00**<br>**TOTAL: $63,215.10  (debit from 420000762)** |

Flooring Solutions, Inc.

BY: Fazeel M. Syed, President

Sonabank

Marie Taylor Leibson Sr. Vice President

GUARANTORS:

F S Trading, Inc.

BY: Fazeel M. Syed, President

Fazeel M. Syed, Individually

M'Ammore, Inc.

BY: Fazeel M. Syed-President

COMMONWEALTH OF VIRGINIA
CITY/COUNTY OF Fauquier  ; to wit:

The foregoing Amendment was acknowledged before me in the foregoing jurisdiction this 29th day of June 2016, by Fazeel M. Syed.

Notary Public

My commission expires: 4/30/2017
Registration # 309288

# EXHIBIT B

# BUSINESS LOAN AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $3,000,000.00 | 06-16-2008 | 12-16-2009 | 52-01-000220 | | | MDD | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:**  Flooring Solutions, Inc.
22445 Powers Court
Sterling, VA  20166

**Lender:**  Sonabank, N.A.
Warrenton Loan Production Office
550 Broadview Avenue
Warrenton, VA  20186

THIS BUSINESS LOAN AGREEMENT dated June 16, 2008, is made and executed between Flooring Solutions, Inc. ("Borrower") and Sonabank, N.A. ("Lender") on the following terms and conditions. Borrower has received prior commercial loans from Lender or has applied to Lender for a commercial loan or loans or other financial accommodations, including those which may be described on any exhibit or schedule attached to this Agreement. Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement; (B) the granting, renewing, or extending of any Loan by Lender at all times shall be subject to Lender's sole judgment and discretion; and (C) all such Loans shall be and remain subject to the terms and conditions of this Agreement.

**TERM.** This Agreement shall be effective as of June 16, 2008, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until December 16, 2009.

**ADVANCE AUTHORITY.** The following person or persons are authorized, except as provided in this paragraph, to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: **Fazeel M. Syed, President of Flooring Solutions, Inc. A Borrowing Base Certificate and copy of latest A/R to accompany request.**

**CONDITIONS PRECEDENT TO EACH ADVANCE.** Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

**Loan Documents.** Borrower shall provide to Lender the following documents for the Loan: (1) the Note; (2) Security Agreements granting to Lender security interests in the Collateral; (3) financing statements and all other documents perfecting Lender's Security Interests; (4) evidence of insurance as required below; (5) guaranties; (6) together with all such Related Documents as Lender may require for the Loan; all in form and substance satisfactory to Lender and Lender's counsel.

**Borrower's Authorization.** Borrower shall have provided in form and substance satisfactory to Lender properly certified resolutions, duly authorizing the execution and delivery of this Agreement, the Note and the Related Documents. In addition, Borrower shall have provided such other resolutions, authorizations, documents and instruments as Lender or its counsel, may require.

**Payment of Fees and Expenses.** Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

**Representations and Warranties.** The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct.

**No Event of Default.** There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

**REPRESENTATIONS AND WARRANTIES.** Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any Indebtedness exists:

**Organization.** Borrower is a corporation for profit which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the Commonwealth of Virginia. Borrower is duly authorized to transact business in all other states in which Borrower is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Borrower is doing business. Specifically, Borrower is, and at all times shall be, duly qualified as a foreign corporation in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. Borrower has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. Borrower maintains an office at 22445 Powers Court, Sterling, VA  20166. Unless Borrower has designated otherwise in writing, the principal office is the office at which Borrower keeps its books and records including its records concerning the Collateral. Borrower will notify Lender prior to any change in the location of Borrower's state of organization or any change in Borrower's name. Borrower shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Borrower and Borrower's business activities.

**Assumed Business Names.** Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by Borrower. Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business: **None.**

**Authorization.** Borrower's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Borrower and do not conflict with, result in a violation of, or constitute a default under (1) any provision of (a) Borrower's articles of incorporation or organization, or bylaws, or (b) any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

**Financial Information.** Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in such financial statements.

**Legal Effect.** This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

**Properties.** Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to

ate of Borrower's properties free and clear of all Security Interests and has not executed any security agreements or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years.

**Hazardous Substances.** Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that: (1) During the period of Borrower's ownership of the Collateral, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from any of the Collateral. (2) Borrower has no knowledge of, or reason to believe that there has been (a) any breach or violation of any Environmental Laws; (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Collateral by any prior owners or occupants of any of the Collateral; or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters. (3) Neither Borrower nor any tenant, contractor, agent or other authorized user of any of the Collateral shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from any of the Collateral; and any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations, and ordinances, including without limitation all Environmental Laws. Borrower authorizes Lender and its agents to enter upon the Collateral to make such inspections and tests as Lender may deem appropriate to determine compliance of the Collateral with this section of the Agreement. Any inspections or tests made by Lender shall be at Borrower's expense and for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Borrower or to any other person. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Collateral for hazardous waste and Hazardous Substances. Borrower hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of a hazardous waste or substance on the Collateral. The provisions of this section of the Agreement, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the termination, expiration or satisfaction of this Agreement and shall not be affected by Lender's acquisition of any interest in any of the Collateral, whether by foreclosure or otherwise.

**Litigation and Claims.** No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing.

**Taxes.** To the best of Borrower's knowledge, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided.

**Lien Priority.** Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that may in any way be superior to Lender's Security Interests and rights in and to such Collateral.

**Binding Effect.** This Agreement, the Note, all Security Agreements (if any), and all Related Documents are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

**AFFIRMATIVE COVENANTS.** Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

**Notices of Claims and Litigation.** Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

**Financial Records.** Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

**Financial Statements.** Furnish Lender with the following:

**Annual Statements.** As soon as available, but in no event later than one-hundred-twenty (120) days after the end of each fiscal year, Borrower's balance sheet and income statement for the year ended, compiled by a certified public accountant satisfactory to Lender.

**Tax Returns.** As soon as available, but in no event later than one-hundred-twenty (120) days after the applicable filing date for the tax reporting period ended, Federal and other governmental tax returns, prepared by a certified public accountant satisfactory to Lender.

**Additional Requirements.** Borrower to maintain a minimum combined debt service coverage of 1.25x.

All financial reports required to be provided under this Agreement shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Borrower as being true and correct.

**Additional Information.** Furnish such additional information and statements, as Lender may request from time to time.

**Insurance.** Maintain fire and other risk insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, coverages and with insurance companies acceptable to Lender. Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such lender's loss payable or other endorsements as Lender may require.

**Insurance Reports.** Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender may reasonably request, including without limitation the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the properties insured; (5) the then current property values on the basis of which insurance has been obtained, and the manner of determining those values; and (6) the expiration date of the policy. In addition, upon request of Lender (however not more often than annually), Borrower will have an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral. The cost of such appraisal shall be paid by Borrower.

**Guaranties.** Prior to disbursement of any Loan proceeds, furnish executed guaranties of the Loans in favor of Lender, executed by the guarantors named below, on Lender's forms, and in the amounts and under the conditions set forth in those guaranties.

| Names of Guarantors | Amounts |
|---|---|
| PS Trading, LLC | $3,000,000.00 |
| Fazeel M. Syed | $3,000,000.00 |

**Other Agreements.** Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements.

**Loan Proceeds.** Use all Loan proceeds solely for the following specific purposes: Pursuant to the terms and conditions of the Loan, Lender shall make advances to the Borrower from time to time during the term of the Loan upon Borrower's request, provided that the outstanding principal amount of such advances may not exceed the lesser of (i) $3,000,000.00 or (ii) the Borrowing Base (as defined herein) (such amount being the "Revolving Commitment"). Within that limit, and subject to the other terms and conditions of the Loan, the Borrower may from time to time borrow, prepay, and re-borrow revolving advances.

"Borrowing Base" means, as of any date of its determination by the Lender, 80% of the value of the Eligible Accounts (defined herein) of the Borrower.

"Eligible Accounts" means, with respect to the Borrower and as of any date of its determination by the Lender, the accounts receivable of such Borrower which are reflected on the balance sheet of such Borrower as of such date in accordance with generally accepted accounting principles, excluding, however:

(a)      accounts receivable in which the Lender does not have a first priority perfected security interest (including accounts receivable governed by the Federal Assignment of Claims Act unless properly assigned pursuant to that ACT) and accounts receivable which are not "accounts" as such term is defined in the Virginia Uniform Commercial Code (including those represented by any promissory note, trade acceptance, chattel paper, draft, or other instrument);

(b)      accounts receivable which did not arise from an enforceable order or contract for the absolute and final sale of the inventory or services of the Borrower or accounts receivable for which the sales or services have not been fully performed in the ordinary course of business of the Borrower;

(c)      accounts receivable which are older than 120 days after the date of the invoice that generated such accounts receivable;

(d)      accounts receivable which are subject to any contest or offset, including contra accounts, or which have been disputed;

(e)      accounts receivable which were not generated in an arm's length transaction or are accounts receivable from any affiliate of the Borrower and any accounts receivable which have already been included as Eligible Accounts from such affiliates;

(f)      accounts receivable which are otherwise unacceptable as collateral, including foreign and bonded, as determined by the Lender according to the reasonable policies of the Lender.

(g)      bonded receivables will be allowed to a maximum limit of $1,000,000.00.

**Taxes, Charges and Liens.** Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits. Provided however, Borrower will not be required to pay and discharge any such assessment, tax, charge, levy, lien or claim so long as (1) the legality of the same shall be contested in good faith by appropriate proceedings, and (2) Borrower shall have established on Borrower's books adequate reserves with respect to such contested assessment, tax, charge, levy, lien, or claim in accordance with GAAP.

**Performance.** Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

**Operations.** Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel; provide written notice to Lender of any change in executive and management personnel; conduct its business affairs in a reasonable and prudent manner.

**Environmental Studies.** Promptly conduct and complete, at Borrower's expense, all such investigations, studies, samplings and testings as may be requested by Lender or any governmental authority relative to any substance, or any waste or by-product of any substance defined as toxic or a hazardous substance under applicable federal, state, or local law, rule, regulation, order or directive, at or affecting any property or any facility owned, leased or used by Borrower.

**Compliance with Governmental Requirements.** Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the conduct of Borrower's properties, businesses and operations, and to the use or occupancy of the Collateral, including without limitation, the Americans With Disabilities Act. Borrower may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Borrower has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Collateral are not jeopardized. Lender may require Borrower to post adequate security or a surety bond, satisfactory to Lender, to protect Lender's interest.

**Inspection.** Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records. If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

**Compliance Certificates.** Unless waived in writing by Lender, provide Lender at least annually and at the time of each disbursement of Loan proceeds, with a certificate executed by Borrower's chief financial officer, or other officer or person acceptable to Lender, certifying that the representations and warranties set forth in this Agreement are true and correct as of the date of the certificate and further certifying that, as of the date of the certificate, no Event of Default exists under this Agreement.

**Environmental Compliance and Reports.** Borrower shall comply in all respects with any and all Environmental Laws; not cause or permit to exist, as a result of an intentional or unintentional action or omission on Borrower's part or on the part of any third party, on property owned and/or occupied by Borrower, any environmental activity where damage may result to the environment, unless such environmental activity is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal, state or local governmental authorities; shall furnish to Lender promptly and in any event within thirty (30) days after receipt thereof a copy of any notice, summons, lien, citation, directive, letter or other communication from any governmental agency or instrumentality concerning any intentional or unintentional action or omission on Borrower's part in connection with any environmental activity whether or not there is damage to the environment and/or other natural resources.

**Additional Assurances.** Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity.

**NEGATIVE COVENANTS.** Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

**Indebtedness and Liens.** (1) Except for trade debt incurred in the normal course of business and indebtedness to Lender contemplated by this Agreement, create, incur or assume indebtedness for borrowed money, including capital leases, (2) sell, transfer, mortgage, assign, pledge, lease, grant a security interest in, or encumber any of Borrower's assets (except as allowed as Permitted Liens), or (3) sell with recourse any of Borrower's accounts, except to Lender.

**Additional Financial Restrictions.** Owner's compensation and distributions will not exceed $450,000.00 plus sub-S distributions for taxes until the company achieves a tangible leverage ratio of 4:1.

**Continuity of Operations.** (1) Engage in any business activities substantially different than those in which Borrower is presently engaged, (2) cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change its name, dissolve or transfer or sell Collateral out of the ordinary course of business, or (3) pay any dividends on Borrower's stock (other than dividends payable in its stock), provided, however that notwithstanding the foregoing, but only so long as no Event of Default has occurred and is continuing or would result from the payment of dividends, if Borrower is a "Subchapter S Corporation" (as defined in the Internal Revenue Code of 1986, as amended), Borrower may pay cash dividends on its stock to its shareholders from time to time in amounts necessary to enable the shareholders to pay income taxes and make estimated income tax payments to satisfy their liabilities under federal and state law which arise solely from their status as Shareholders of a Subchapter S Corporation because of their ownership of shares of Borrower's stock, or purchase or retire any of Borrower's outstanding shares or alter or amend Borrower's capital structure.

**Loans, Acquisitions and Guaranties.** (1) Loan, invest in or advance money or assets to any other person, enterprise or entity, (2) purchase, create or acquire any interest in any other enterprise or entity, or (3) incur any obligation as surety or guarantor other than in the ordinary course of business.

**Agreements.** Borrower will not enter into any agreement containing any provisions which would be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith.

**CESSATION OF ADVANCES.** If Lender has made any commitment to make any Loan to Borrower, whether under this Agreement or under any other agreement, Lender shall have no obligation to make Loan Advances or to disburse Loan proceeds if: (A) Borrower or any Guarantor is in default under the terms of this Agreement or any of the Related Documents or any other agreement that Borrower or any Guarantor has with Lender; (B) Borrower or any Guarantor dies, becomes incompetent or becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt; (C) there occurs a material adverse change in Borrower's financial condition, in the financial condition of any Guarantor, or in the value of any Collateral securing any Loan; or (D) any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guaranty of the Loan or any other loan with Lender; or (E) Lender in good faith deems itself insecure, even though no Event of Default shall have occurred.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Loan.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, or a trustee or receiver is appointed for Borrower or for all or a substantial portion of the assets of Borrower, or Borrower makes a general assignment for the benefit of Borrower's creditors, or Borrower files for bankruptcy, or an involuntary bankruptcy petition is filed against Borrower and such involuntary petition remains undismissed for sixty (60) days.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any

if ... Grantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Loan is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default on Indebtedness, is curable and if Borrower or Grantor, as the case may be, has not been given a notice of a similar default within the preceding twelve (12) months, it may be cured if Borrower or Grantor, as the case may be, after receiving written notice from Lender demanding cure of such default: (1) cure the default within thirty (30) days; or (2) if the cure requires more than thirty (30) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**EFFECT OF AN EVENT OF DEFAULT.** If any Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement or the Related Documents or any other agreement immediately will terminate (including any obligation to make further Loan Advances or disbursements), and, at Lender's option, all sums owing in connection with the Loans, including all principal, interest, and all other fees, costs and charges, if any, will become immediately due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional. In addition, Lender shall have all the rights and remedies provided in the Related Documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of any Grantor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Borrower agrees that if Lender hires an attorney to help enforce this Agreement, Borrower will pay, subject to any limits under applicable law, Lender's attorneys' fees and all of Lender's other collection expenses, whether or not there is a lawsuit and including without limitation additional legal expenses for bankruptcy proceedings.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Consent to Loan Participation.** Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender. Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters. Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests. Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests. Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan. Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Virginia without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the Commonwealth of Virginia.

**Choice of Venue.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the applicable courts for Fauquier County, Commonwealth of Virginia.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any of Borrower's or any Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, if hand delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address. Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Subsidiaries and Affiliates of Borrower.** To the extent the context of any provisions of this Agreement makes it appropriate, including without limitation any representation, warranty or covenant, the word "Borrower" as used in this Agreement shall include all of Borrower's subsidiaries and affiliates. Notwithstanding the foregoing however, under no circumstances shall this Agreement be construed to require

extend credit to make any loan or other financial accommodation to any of Borrower's subsidiaries or affiliates.

**Successors and Assigns.** All covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Borrower shall not, however, have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender.

**Survival of Representations and Warranties.** Borrower understands and agrees that in extending Loan Advances, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents. Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the extension of Loan Advances and delivery to Lender of the Related Documents, shall be continuing in nature, shall be deemed made and redated by Borrower at the time each Loan Advance is made, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in effect on the date of this Agreement:

**Advance.** The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf on a line of credit or multiple advance basis under the terms and conditions of this Agreement.

**Agreement.** The word "Agreement" means this Business Loan Agreement, as this Business Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Business Loan Agreement from time to time.

**Borrower.** The word "Borrower" means Flooring Solutions, Inc. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, and their personal representatives, successors and assigns.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means Sonabank, N.A., its successors and assigns.

**Loan.** The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation those loans and financial accommodations described herein or described on any exhibit or schedule attached to this Agreement from time to time.

**Note.** The word "Note" means the Note executed by Flooring Solutions, Inc. in the principal amount of $3,000,000.00 dated June 16, 2008, together with all modifications of and renewals, replacements, and substitutions for the note or credit agreement.

**Permitted Liens.** The words "Permitted Liens" mean (1) liens and security interests securing Indebtedness owed by Borrower to Lender; (2) liens for taxes, assessments, or similar charges either not yet due or being contested in good faith; (3) liens of materialmen, mechanics, warehousemen, or carriers, or other like liens arising in the ordinary course of business and securing obligations which are not yet delinquent; (4) purchase money liens or purchase money security interests upon or in any property acquired or held by Borrower in the ordinary course of business to secure indebtedness outstanding on the date of this Agreement or permitted to be incurred under the paragraph of this Agreement titled "Indebtedness and Liens"; (5) liens and security interests which, as of the date of this Agreement, have been disclosed to and approved by the Lender in writing; and (6) those liens and security interests which in the aggregate constitute

Case 16-12380-BFK    Doc 18    Filed 07/15/16    Entered 07/15/16 13:07:59    Desc Main
Document    Page 54 of 70

Loan No: 52-01-000220

BUSINESS LOAN AGREEMENT
(Continued)

Page 7

immaterial and insignificant monetary amount with respect to the value of Borrower's assets. The words "Related Documents" also mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

**Security Agreement.** The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

**Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise.

BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS BUSINESS LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS. THIS BUSINESS LOAN AGREEMENT IS DATED JUNE 16, 2008.

THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

FLOORING SOLUTIONS, INC.

By: _____ (Seal)
    Fazeel M. Syed, President of Flooring Solutions, Inc.

LENDER:

SONABANK, N.A.

By: _____ (Seal)
    Authorized Signer

# EXHIBIT C

# COMMERCIAL SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $3,000,000.00 | 06-16-2008 | 12-16-2009 | 52-01-000220 | | | MTL | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

| **Grantor:** | Flooring Solutions, Inc.<br>22445 Powers Court<br>Sterling, VA  20166 | **Lender:** | Sonabank, N.A.<br>Warrenton Loan Production Office<br>550 Broadview Avenue<br>Warrenton, VA  20186 |
|---|---|---|---|

**THIS COMMERCIAL SECURITY AGREEMENT** dated June 16, 2008, is made and executed between Flooring Solutions, Inc. ("Grantor") and Sonabank, N.A. ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

All Inventory, Chattel Paper, Accounts and General Intangibles, contracts and contract rights

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A) All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender. This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Grantor may not be indebted to Lender.

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management of the Corporation Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its certificate or articles of incorporation and bylaws do not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. At the time any account becomes subject to a security interest in favor of Lender, the account shall be a good and valid account representing an undisputed, bona fide indebtedness incurred by the account debtor, for merchandise held subject to delivery instructions or previously shipped or delivered pursuant to a contract of sale, or for services previously performed by Grantor with or for the account debtor. So long as this Agreement remains in effect, Grantor shall not, without Lender's prior written consent, compromise, settle, adjust, or extend payment under or with regard to any such Accounts. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts or general intangibles, the records concerning the Collateral) at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities

Grantor owns, rents, leases, or uses; and (b) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, including the sales of inventory, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the Commonwealth of Virginia, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. While Grantor is not in default under this Agreement, Grantor may sell inventory, but only in the ordinary course of its business and only to buyers who qualify as a buyer in the ordinary course of business. A sale in the ordinary course of Grantor's business does not include a transfer in partial or total satisfaction of a debt or any bulk sale. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis acceptable to Lender and issued by a company or companies acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of

determining that value; and (6) the expiration date of the policy.  In addition, Grantor shall upon request by Lender (however not more than once often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.**  Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest.  At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property.  Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs.  Lender irrevocably appoints Lender to execute documents necessary to transfer title if there is a default.  Lender may file a copy of this Agreement as a financing statement.  If Grantor changes Grantor's name or address, or the name or address of any person granting a security interest under this Agreement changes, Grantor will promptly notify the Lender of such change.

**GRANTOR'S RIGHT TO POSSESSION AND TO COLLECT ACCOUNTS.**  Until default and except as otherwise provided below with respect to accounts, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral.  Until otherwise notified by Lender, Grantor may collect any of the Collateral consisting of accounts.  At any time and even though no Event of Default exists, Lender may exercise its rights to collect the accounts and to notify account debtors to make payments directly to Lender for application to the Indebtedness.  If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care.  Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.**  If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral.  All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor.  All such expenses will become a part of the Indebtedness and, at Lender's option, will  (A)  be payable on demand;  (B)  be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either  (1)  the term of any applicable insurance policy; or  (2)  the remaining term of the Note; or  (C)  be treated as a balloon payment which will be due and payable at the Note's maturity.  The Agreement also will secure payment of these amounts.  Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.**  Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.**  Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.**  Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**False Statements.**  Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.**  This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.**  The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.**  Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness.  This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender.  However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.**  Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or Guarantor dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.**  A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.**  Lender in good faith believes itself insecure.

**Cure Provisions.**  If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default:  (1)  cures the default within thirty (30) days; or  (2)  if the cure requires more than thirty (30) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.**  If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Virginia Uniform Commercial Code.  In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.**  Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.**  Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the Rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees that if Lender hires an attorney to help enforce this Agreement, Grantor will pay, subject to any limits under applicable law, Lender's attorneys' fees and all of Lender's other collection expenses, whether or not there is a lawsuit and including without limitation additional legal expenses for bankruptcy proceedings.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Virginia without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the Commonwealth of Virginia.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the applicable courts for Fauquier County, Commonwealth of Virginia.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, if hand delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other

secured party. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral. Grantor promptly will notify Lender of any change to Grantor's name.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their heirs, personal representatives, successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means Flooring Solutions, Inc. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means Flooring Solutions, Inc..

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means Sonabank, N.A., its successors and assigns.

**Note.** The word "Note" means the Note executed by Flooring Solutions, Inc. in the principal amount of $3,000,000.00 dated June 16, 2008, together with all modifications of and renewals, replacements, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED JUNE 16, 2008.

THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

**COMMERCIAL SECURITY AGREEMENT
(Continued)**

**GRANTOR:**

FLOORING SOLUTIONS, INC.

By: _____ (Seal)
    Fazeel M. Syed, President of Flooring Solutions, Inc.

LASER PRO Lending, Ver. 5.39.00.008 Copr. Harland Financial Solutions, Inc. 1997, 2008.  All Rights Reserved.  - VA  c:\CFI\LPL\E40.FC  TR-1196  PR-22

# SONABANK, N.A.
## SECURITY AND COMPLIANCE AGREEMENT

1.  **Flooring Solutions, Inc.** hereinafter called "Debtor"), for value received, hereby grants to Sonabank, N.A., 550 Broadview Avenue, #LL, Warrenton, VA 20186, (hereinafter called "Secured Party"), a security interest in the property described below (hereinafter collectively called "Collateral") to secure the payment of the principal and interest on and all obligations under a note (hereinafter called the "Note"), dated __**June 16, 2008,** of the Debtor payable to the order of the Secured Party, in the principal amount of **Three Million  & no/100                   ,** all renewals and extensions of the Note, and all costs, expenses, advances and liabilities which may be made or incurred by Secured Party in the disbursement, administration and   collection of the loan evidenced by the Note and in the protection, maintenance and liquidation of the security interest hereby granted with interest at the maximum legal rate on such costs, expenses, advances and liabilities.   The Note and all other obligations secured hereby are herein collectively called the "Liabilities."

2. The Collateral in which this security interest is granted is all of the Debtor's property described below in reference to which an "X" or checkmark has been placed in the blank applicable thereto, together with all the proceeds and products therefrom.  If two such boxes are so marked, the security interest so designated secures the purchase money from the loan used by the Debtor to acquire title to the Collateral.

_x__ ____        **a.** All equipment and machinery, including power-driven machinery and equipment, furniture and fixtures now owned or hereafter acquired, together with all replacements thereof, all attachments, accessories, parts and tools belonging thereto or for use in connection therewith.

__x_ ____        **b.** All passenger and commercial motor vehicles registered for use upon public highways or streets, now owned or hereinafter acquired, together with all replacements thereof, all attachments, accessories, parts, equipment and tools belonging thereto or for use in connection therewith.

__x_ _____     **c.** All inventory, raw materials, work in process and supplies now owned or hereafter acquired.

__x_ _____     **d.** All accounts receivable and cash now outstanding or hereafter arising.

__x__ _____    **e.** All contract rights and general intangibles now in force or hereafter acquired.

__x__ _____     **f.** Government Contracts assigned to Sonabank , pursuant to the Assignment of Claims Act of 1940.

3.  Debtor shall not transfer, sell or assign Debtor's interest in the Collateral nor permit any other security interest to be created thereon without Secured Party's prior written approval, except that Debtor may sell the inventory listed in Paragraph 2c hereof in the ordinary course of business on customary terms and at usual prices and may collect as Secured Party's agent sums due on accounts receivable and contract rights listed in Paragraphs 2d. and 2e. until advised otherwise by Secured Party.

4. Lock Box.  Collateral Account.  Debtor will process payments due under the relevant account directly to a special lock box to be under the control of Secured Party.  All account debtors will direct ACH payments and wire transfer to the special collateral account to be established and maintained with Secured Party. All deposits in said collateral account shall constitute proceeds of Collateral and shall not constitute payment of any Obligation.  Nightly, Secured Party will apply finally collected funds on deposit in said collateral account to the payment of the Obligations. Until so deposited, all payments on accounts and chattel paper received by debtor shall be held in trust by Debtor for and as the property of secured Party and shall not be commingled with any funds or property of Debtor.

5. Secured Party shall charge debtor fees as follows:
   *a.*  Audit/ Compliance/Administration and Lock Box processing fees of $__200.00 monthly.
   b.  In the event that Secured Party's out standings exceed the amount provided for under its borrowing base a fee of $ 30.00 will be charged on the first day and a fee of $30.00 every day thereafter.
   6.  Debtor shall not conduct business under any other name than that given above nor change or reorganize the type of business entity under which it does business except upon prior written approval of Secured Party.  If such approval is given, Debtor guarantees that all documents, instruments and agreements demanded by Secured Party shall be prepared and filed at Debtor's expense before such change of name or business entity occurs.

   7.  Debtor shall pay the filing and recording costs of any documents or instruments necessary to perfect, extend, modify, or terminate the security interest created hereunder, as demanded by Secured Party.

   8.  Debtor shall maintain all Collateral in good condition, pay promptly all taxes, judgments, or changes of any kind levied or assessed thereon, keep current all rent due on premises where Collateral is located, and maintain insurance on all Collateral against such hazards, in such amounts and with such companies as Secured Party may demand, all such insurance policies to be in the possession of Secured Party and to contain a Lender's Loss Payable Clause naming Secured Party in a manner satisfactory to Secured Party. Debtor hereby assigns to Secured Party any proceeds of such policies and all unearned premiums thereon, and authorizes and empowers Secured Party to collect such sums and to execute and endorse in Debtor's name all proofs of loss, drafts, checks and any other documents necessary to accomplish such collections, and any persons or entities

making payments to Secured Party under the terms of this Paragraph are hereby relieved absolutely from any obligation to see the application of any sums so paid.

9. Debtor shall be in default hereunder if Debtor fails to perform any of the liabilities imposed hereby or any other obligation required by the various instruments or papers evidencing or securing this loan, or if the full balance of the loan becomes immediately payable under the terms of such instruments, either automatically or by declaration of the Secured Party. In the event of any default, Secured Party may, in its own discretion, cure such default and, if it does so, any expenditures made for such purpose shall be added to the principal of the Note.

10. In the event of default, Debtor shall assemble and make available all Collateral at any place designated by Secured Party. Debtor acknowledges being advised of a constitutional right to a court notice and hearing to determine whether, upon default there is probable cause to sustain the validity of the Secured Party's claim and whether the Secured Party is entitled to possession of the Collateral and being so advised, Debtor hereby voluntarily gives up, waives and surrenders any right to a notice and hearing to determine whether there is probable cause to sustain the validity of Secured Party's claim. Any notices required pursuant to any state or local law shall be deemed reasonable if mailed by Secured Party to the persons entitled thereto at their last known addresses at least ten days prior to disposition of the Collateral, and, in reference to a private sale, need state only that Secured Party intends to negotiate such a sale. Disposition of Collateral shall be deemed commercially reasonable if made pursuant to a public offering advertised at least twice in a newspaper of general circulation in the community where the Collateral is located or by a private sale for a sum equal to or in excess of the liquidation value of the Collateral as determined by Secured Party.

12. All rights conferred on Secured Party hereby are in addition to those granted to it by any state or local law or any other law. Failure or repeated failure to enforce any rights hereunder shall not constitute an estoppel or waiver of Secured Party's rights to exercise such rights accruing prior or subsequent thereto. Secured Party shall not be liable for any loss to Collateral in its possession, nor shall such loss diminish the debt due, even if the loss is caused or contributed to by Secured Party's negligence.

IN WITNESS WHEREOF, Debtor has executed or caused to be duly executed this agreement and has affixed or caused to be duly affixed hereto debtor's seal, this _16TH_ day of _JUNE_____, 2008.

**Any changes to terms of this loan, as well as noncompliance with the terms of this loan will result in additional fees assessed.**

Flooring Solutions, Inc.

BY: _____

Dated: __6-16-08__

STATE OF VIRGINIA
COUNTY OF __Fairfax__, TO WIT:

Sworn and Subscribed to me this __10th__ day of __June_____, 2008

_____
Notary Public

My commission expires:_____
Registration #_____

Terri L. Diffenbaugh
NOTARY PUBLIC
Commonwealth of Virginia
Reg. # 362597
My Commission Expires
August 31, 2009

# EXHIBIT D

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Sonabank, N.A.
Warrenton Loan Production Office
550 Broadview Avenue
Warrenton, VA  20186

080618  7032

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Flooring Solutions, Inc. | | | | |

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 22445 Powers Court | Sterling | VA | 20166 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | Corporation | VA | ☒ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Sonabank, N.A. | | | | |

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 550 Broadview Avenue | Warrenton | VA | 20186 | USA |

4. This FINANCING STATEMENT covers the following collateral:

All Inventory, Chattel Paper, Accounts and General Intangibles contracts and contract rights; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds).

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS    Attach Addendum    [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA
Loan #52-01000220

ACKNOWLEDGEMENT COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

Harland Financial Solutions
400 S.W. 6th Avenue, Portland, Oregon 97204

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER** [optional]

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

Sonabank, a State chartered bank
Warrenton Loan Production Office
550 Broadview Avenue
Warrenton, VA 20186

CLERK'S OFFICE

2012 MAR -7 PM 12: 33

UCC

120307 3871-3

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME |  |  |  |
|---|---|---|---|
| Flooring Solutions, Inc. |  |  |  |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
|  |  |  |  |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 22445 Powers Court | Sterling | VA | 20166 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
|  |  | Corporation | VA |  ☒NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME |  |  |  |
|---|---|---|---|
|  |  |  |  |

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
|  |  |  |  |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
|  |  |  |  |  |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
|  |  |  |  | ☐NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME |  |  |  |
|---|---|---|---|
| Sonabank, a State chartered bank |  |  |  |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
|  |  |  |  |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 550 Broadview Avenue | Warrenton | VA | 20186 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.

| 5. ALTERNATIVE DESIGNATION (if applicable): | ☐LESSEE/LESSOR | ☐CONSIGNEE/CONSIGNOR | ☐BAILEE/BAILOR | ☐SELLER/BUYER | ☐AG. LIEN | ☐NON-UCC FILING |
|---|---|---|---|---|---|---|
| **6.** This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum    [if applicable] | | **7.** Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | | ☐All Debtors | ☐Debtor 1 | ☐Debtor 2 |
| **8.** OPTIONAL FILER REFERENCE DATA #52-05000317 | | | | | | |

ACKNOWLEDGEMENT COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

Harland Financial Solutions
400 S.W. 6th Avenue, Portland, Oregon 97204

# UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

| 9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT |
|---|

OR

9a. ORGANIZATION'S NAME
**Flooring Solutions, Inc.**

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |
|---|---|---|

10. MISCELLANEOUS:

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (11a or 11b) - do not abbreviate or combine names

OR

11a. ORGANIZATION'S NAME

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 11d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any | □ NONE |
|---|---|---|---|---|---|

12. □ ADDITIONAL SECURED PARTY'S  or  □ ASSIGNOR S/P'S NAME - insert only one name (12a or 12b)

OR

12a. ORGANIZATION'S NAME

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

13. This FINANCING STATEMENT covers ☒ timber to be cut or ☒ as-extracted collateral, or is filed as a ☒ fixture filing.

14. Description of real estate:

16. Additional collateral description:

15. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

17. Check only if applicable and check only one box.
Debtor is a □ Trust  or  □ Trustee acting with respect to property held in trust  or  □ Decedent's Estate

18. Check only if applicable and check only one box.
□ Debtor is a TRANSMITTING UTILITY
□ Filed in connection with a Manufactured-Home Transaction
□ Filed in connection with a Public-Finance Transaction

ACKNOWLEDGMENT COPY — UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/21/09)

Harland Financial Solutions
400 S.W. 6th Avenue, Portland, Oregon 97204

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

Chasity Burner 540-347-4521

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

Sonabank
550 Broadview Ave.
Warrenton VA 20186

SCC-CLERK'S OFFICE

2013 JAN 22 P 3:57

130122 4208-9

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # | 1b. | This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|---|
| 0806187032-9 | ☐ | |

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**3.** ☑ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**4.** ☐ **ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

**5. AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address; Please refer to the detailed instructions in regards to changing the name/address of a party.   ☐ DELETE name: Give record name to be deleted in item 6a or 6b.   ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

**6. CURRENT RECORD INFORMATION:**

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  Flooring Solutions, Inc. | | | |
| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

**7. CHANGED (NEW) OR ADDED INFORMATION:**

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  | | | |
| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 22445 Powers Court | Sterling | VA | 20166 | USA |

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | Inc | VA | | |

**8. AMENDMENT (COLLATERAL CHANGE):** check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.   ☑ NONE

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  Sonabank | | | |
| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

**10. OPTIONAL FILER REFERENCE DATA**

5201000220

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)